IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Carla Lacombe as Personal Representative Of the Estate of Thomas H. Bell and OPUS Assurance Services Corporation<br><br>Plaintiffs,<br><br>V.<br><br>Gary L. Thornhill, Mary L. Thornhill, Mary L/ Thornhill Living Trust, John McSwaney, Thornhill Financial Corp. Thornhill Assurance Services, Inc. Cobalt LT Holdings, LLC, MLT Enterprises, Inc. Kevin Jay Laing, and Advisory 4 Life, LLC<br><br>Defendants. | 1:24-cv-01998-MGL<br><br>**COMPLAINT**<br><br>**Breach of Contract, Breach of Obligation of Good Faith and Fair Dealing, Fraud/Constructive Fraud, Negligent Misrepresentation, Interference with a Contractual Relationship, Interference with Prospective Contractual Relations, Civil Conspiracy, Unjust Enrichment/ Quantum Meriut.** |

Plaintiff's, complaining of the Defendants, would respectfully show unto this court as follows:

## **PARTIES**

1. Plaintiff, Carla Lacombe as Personal Representative of the Estate of Thomas H. Bell is a resident of Aiken County, South Carolina.

2. Plaintiff, Opus Assurance Services Corporation, is a corporation existing and operating under South Carolina laws.

3. Defendant, Gary Thornhill, upon information and belief, is a citizen and resident of Arizona.

4. Defendant, Mary Thornhill, upon information and belief, is the wife of Defendant Gary Thornhill and has no knowledge or expertise in the insurance business and is a citizen and resident of Arizona.

5. Defendant, Mary Thornhill Living Trust, upon information and belief, is existing and operating under the laws of Arizona.

7. Defendant, John McSwaney, upon information and belief, is a citizen and resident of Florida.

8. Defendant, Thornhill Financial Corporation, upon information and belief, is existing and operating under the laws of Arizona.

9. Defendant, Cobalt Holdings, LLC, upon information and belief, is existing and operating under the laws of Arizona.

10. Defendant, MLT Enterprises, LLC, upon information and belief, is existing and operating under the laws of Arizona.

11. Defendant, Kevin Jay Laing, upon information and belief, is a resident of Minnesota.

12. Defendant, Advisory 4 Life, LLC, upon information and belief, is existing and operating under the laws of Minnesota.

## JURISDICTION

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the Plaintiffs seek to recover a sum of value in excess of $75,000, and the Plaintiffs and Defendants are citizens of different States.

14. Based upon the acts, actions and occurrences set forth herein, this Court has personal jurisdiction over the Defendants based upon their transacting of business in this State,

contracting to supply services in this State, causing tortious injury in this State by an act or omission outside this State, by deriving substantial revenue from goods used or consumed or services rendered in this State, entry into a contract to be performed in whole or in part by either party in this State, and by their physical presence in this state while conducting business as further stated below.

## VENUE

15. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that this action was commenced in the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

16. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(3) and (d) in that this action can be brought in any judicial district in which any defendant is subject to the court's personal jurisdiction; additionally, in which a defendant that is a corporation is subject to personal jurisdiction.

## SUMMARY OF THE CASE/FACTUAL ALLEGATIONS

17. On or about March 24, 2016, Defendant, Gary Thornhill, was indicted pursuant to 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1341 (Mail Fraud) 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 (Forfeiture of Fraud Proceeds).

18. The allegations contained in the Indictment allege that Gary Thornhill was a licensed insurance broker, that he owned and operated a boutique insurance brokerage in the city of Santa Clara California, that he catered to the needs of high net-worth individuals, that he sold a policy on or about April 1998 to a client and her husband, the husband passed

away in 2005 and left his policy to his wife, in 2008 Defendant, Gary Thornhill, became the trustee of the entity designated by the surviving spouse as the legal owner of the policy, that beginning in 2011 Gary Thornhill devised a scheme to defraud his client in connection with his management and oversight of the policy to obtain money and property by means of false and fraudulent pretenses, representations and promises, and omitting and concealing of material facts. As part of the scheme to defraud, Gary Thornhill obtained money for his personal use by transmitting written requests for funds drawn against the cash value of the policy without the prior knowledge, consent, or authorization of his client and those funds were eventually funneled into a personal bank account unrelated to his client and were subsequently spent the money of personal expenses unrelated to his client.

19. As a result of the fraudulent scheme, by October 2011, Defendant, Gary Thornhill, obtained nearly $1.5 million in unauthorized funds and unjustly enriched himself for his own personal benefit and purposes.

20. In furtherance of his scheme to defraud, the Indictment alleged, that Gary Thornhill took steps to conceal his unauthorized request for, and receipt of nearly $1.5 million by altering his client's April 2012 annual account statement to remove references to his fraudulent transfers before he provided the annual statement to his client. Throughout his execution to defraud, Defendant, Gary Thornhill, owed a fiduciary duty to his client as well in his capacity as trustee. He failed to act as a fiduciary and for the benefit of his client. Rather, he took actions solely for his own personal financial gain.

21. Defendant, Gary Thornhill, plead guilty to both Wire Fraud and Mail fraud as alleged in the indictment and on September 21, 2017, The Honorable United States District Judge in

the Northern District of California, Lucy H. Koh, executed the Date of Imposition of Judgment.

22. Defendant, Gary Thornhill, was to surrender for service for a period of 60 months on November 15, 2017 for each count to be served concurrently followed by supervised release for a period of three (3) years and was ordered restitution in the amount of $1,409,843.90.

23. As a result of the above, on or about May 18, 2016, The State of California Department of Insurance issued an Order notifying Defendant, Gary Thornhill, that he was "immediately prohibited from participating in any manner in the business of an insurer or insurance production agency, including in engaging in any employment, management of control of any production agency, or from acting as an individual insurance producer…"

24. Despite the above prohibition, Plaintiffs are informed and believe that, Defendant, Gary Thornhill, did not cease and carried on in fraudulent schemes in both violations of the California Department of Insurance Order and other laws contained herein.

25. On March 20, 2024, after the passing of Thomas H. Bell in January 2024, Plaintiffs received a letter from a California attorney, Jon Stanley Heim, who informed Plaintiffs that he represents Defendant, Cobalt LT Holding, LLC.  It is not believed that Mr. Heim holds a license to practice law in South Carolina.

26. Enclosed with the letter were two alleged and undated Agreements for Sale and Purchase of Insurance Production Assets along with two alleged Promissory notes with typed rather than handwritten dates of August 17, 2016 in which Plaintiff, Opus, purportedly agreed to purchase the assets of Thornhill Assurance Services, INC an entity owned and

controlled by Defendant, Gary Thornhill in the aggregate amount of $10 million—only a few months after Defendant, Gary Thornhill's Indictment.

27. The first enclosed is titled Agreement for Sale and Purchase of Insurance Production Assets which, pursuant to the California Insurance Departments Order, prohibited Defendant, Gary Thornhill, from participating in.  The parties to this Agreement are identified as between, Defendant, Thornhill Assurance Services, Inc and Plaintiff, Opus Assurance Services Corporation ("Opus".

28. The subject of the Agreements, not drafted by Plaintiffs, are the "sale, transfer and assignment to Opus of all right, title and interest in and to all insurance production books of business, paper files, electronically-stored files or information, insurance customer lists, insurance expiration dates, financial information, medical information, underwriting information, pipeline work, work in progress trade secrets, good will and other tangible and intangible assets owned, established, complied or in existence or commercial use by Thornhill Assurance in connection with its production and transaction of insurance, financial and related business with Voya Financial (collectively, the 'subject assets'). This Agreement was subject to a $7.5 million Promissory Note.

29. The Second Agreement appears to be nearly identical to the first agreement. However, the Seller party identified in the second Agreement is defendant, Medalist Assurance Services Corporation which was owned, controlled, and managed by Defendant, Gary Thornhill, just like Thornhill Assurances Services, Inc.

30. The second Promissory Note, dated also only in type rather than hand-dated is also August 7, 2016, in the amount of $2.5 million.

31. Both Promissory notes require an unconscionable amount of **95%** of commissions received by Plaintiff's be paid to Defendants for a term of 60 months and 14 days; nearly the *exact* amount of time Defendant, Gary Thornhill, was to serve his prison sentence.

32. No business evaluation was performed to determine the value of either sold by Defendants to Plaintiffs.

33. Upon information and belief, no funds were ever paid by Plaintiff directly to Thornhill Assurance Services, Inc. or Medalist Assurance Services Corporation.

34. Rather, from 2016 to present, Plaintiffs have paid in violation of the below enumerated Causes of Actions to Defendant's and demand return of those funds from each listed Defendant as follows:

    A. Mary Thornhill and/or Mary Thornhill Living Trust $9,300.

    B. John McSwaney               $2,119,435.13.

    C. MLT Enterprises, Inc.       $2,668,795.99.

    D. Thornhill Financial Corp.   $4,663,035.01.

    E. Cobalt LT Holding, LLC      $1,902,415.12.

35. In addition to the above funds, Plaintiffs are informed and believe that it paid an employee of Defendant, "Calleise Johnson" approximately $57,756.95.

36. As mentioned above, Mr. Thomas H. Bell passed away on January 11, 2024.

37. Carla Lacombe was appointed Personal Representative of the Estate of Thomas H. Bell on February 22, 2024, without restrictions.

38. Ms. Lacombe takes her job very seriously and immediately began taking actions to preserve the estate and Opus.

39. She immediately took measures to hire and did hire an agent for Opus.

40. She contacted counsel for both Mr. Bell and Opus.

41. Unfortunately, Ms. Lacombe has encountered relentless roadblocks from those who owe her a duty of care.

42. For example, she, along with undersigned contacted an attorney in Chicago, Mr. Thomas Handler who is believed to be both the accountant and attorney for Plaintiffs. However, despite requests, he has been unaccommodating in providing tax records, returns, files or any other materials that would assist in the administration of the Estate and continued operation of Opus. Mr. Handler verbally assaulted undersigned's staff, informed us that he would not provide any information and wished us "happy hunting".

43. Plainttiffs and undersigned experienced similar responses from the attorney's Mr. Bell hired for his estate planning, Scott Lewis, Esquire licensed in the State of South Carolina. Like Mr. Hander, Mr. Lewis has also refused to provide the entire client's file and been unaccommodating. Further, he provided Ms. Lacombe with contradictory advise. For example, but not limited to, he informed Ms. Lacombe that Defendants Thornhill and McSwaney would assist her in the continued operation of Opus as it was a commercial success as it had paid approximately $10 million to defendants in the past few years and had profitable/lucrative ongoing and upcoming business. That advise changed just a couple days later when Mr. Lewis advised Plaintiffs that he had spoken with Defendants, without her consent or knowledge, and they all, including Mr. Lewis, suggested she dissolve Opus.

44. Additionally, Opus's new agent along with Ms. Lacombe attempted, numerous times, to communicate with Defendants regarding past, ongoing and upcoming business and received no response.

45. Plaintiffs discovered that after Mr. Bell's passing, Defendant, Gary Thornhill, accessed Mr. Bells computer and forwarded emails to himself and deleted all the contents of email folders. Moreover, Defendants sent death notices to clients of Opus without the knowledge or consent of Plaintiff's and in continued violation of the California Department of Insurance Order and in attempt to steal Plaintiffs book of business and income.

46. Plaintiffs are informed and believe that Defendant, Gary Thornhill, despite losing his license continued acting as an insurance agent/producer and sharing in the commissions earned by Opus and the other Defendants joined in his fraudulent scheme, conspiracy and activities for the purpose of enriching themselves.

47. Gary Thornhill, as a "work around" attempted to disguise his continued insurance activities by calling his services "consulting" Plaintiffs allege that consultants do not earn more commissions than agents and that he was assisted in doing so by Defendant's McSwaney, his wife Mary Thornhill, Kevin Laing and perhaps by unlicensed attorneys in South Carolina Heim and Handler.

48. On October 16, 2020, California attorney Heim sent an email to Defendant Gary Thornhill and Mr. Bell which cites California Insurance Code 1748.5 and 18 U.S.C. 1033 noting "that they encompass both felons and those who aid and abet felons in the insurance industry".

49. Similarly, in October 2020, Kristin Schriber, a Supervising Investigator with the California Department of Insurance contacted Mr. Bell informing him that she believed that Defendants, Gary and Mary Thornhill were "working a scam".

50. At the time of the filing of this Complaint, Plaintiffs are engaging with the California Department of Insurance regarding the allegations and facts set forth herein.

51. Plaintiffs are informed and believe that Defendants, Thornhills, did and continue to perpetrate a scam/fraud and has caused and continue to cause damage, along with the other named Defendants, to Plaintiffs; it appears that Defendants Thornhill and McSwaney managed and controlled Plaintiff "Opus" and certainly profited more from it than Plaintiffs did/do.

52. Plaintiffs believe that Defendants have erroneously communicated with former, current, and potential clients, interfered with existing and potential contracts and caused Plaintiff's damage.

53. Plaintiffs believe that Defendants have not acted in good faith and fair dealings towards its Plaintiffs, its clients along with those that owe Plaintiffs a legal duty of care.

54. For example, Defendant, Gary Thornhill via email dated February 7, 2024, to Scott Lewis, Esquire, informing Mr. Lewis that he had just received a call from Defendant McSwaney, and that they had made the decision to service the current book of business of Opus.

55. However, a large client 'BAPS" was/is due to renew, along with perhaps others, and Defendants conspired to take business from Opus for themselves and to interfere with Plaintiff's contracts, potential contracts and production efforts.

56. By way of example, but not limited to, Defendants, Kevin Laing and his company Advisory 4 Life, LLC _**within a week**_ of Mr. Bells passing got licensed in the same states as Mr. Bell and conspired along with the other Defendants to take business away from Opus and interfere with its contracts and potential contracts causing damage to Plaintiffs.

57. Since 2016 and the passing of Mr. Bell, defendants have conspired to damage Plaintiffs by taking and/or its clients and prospective clients, interfered with contractual relations with current and prospective clients, spread rumors about Plaintiff's financial condition/sustainability, unjustly enriched themselves in the approximate aggregate amount of $10+ million, refuse to act pursuant to their legal duty of care, refuse to discuss or assist in the gathering of information, servicing of clients, communicating with Plaintiffs, and have attempted to disguise their actions as "consulting" or hide behind their alter ego LLC's or Corporations to hide their continuing fraudulent schemes and activities.

## FOR A FIRST CAUSE OF ACTION

## BREACH OF CONTRACT AS TO THORNHILL ASSURANCES SERVICES, INC., AND MEDALIST ASSURANCE SERVICES CORPORATION

58. The foregoing factual, jurisdictional and Venue allegations are reiterated and realleged as though set forth verbatim and re-alleges every allegation set forth in paragraphs 1-57.

59. Each Defendant owed a duty of care to Plaintiffs of good faith and fair dealings. At all times relevant Defendants had a contractual relationship with Plaintiffs.

60. Defendants breached its duty by its failure to deliver the assets contained in the Agreements to Plaintiffs and by overstating the value of those assets to which their conduct was outrageous, done with bad motives and reckless indifference to Plaintiff's interests.

61. As a direct and proximate cause of Defendants to perform under the Agreements, Plaintiffs are entitled to actual, consequential, compensatory, and special damages in an amount to be proven at trial.

# FOR A SECOND CAUSE OF ACTION

## FRAUD/CONSTRUCTIVE FRAUD AS DEFENDANTS GARY THORNHILL, THORNHILL ASSURANCE SERVICES, INC., MEDALIST ASSURANCE SERVICES, INC.,

62. The foregoing factual, jurisdictional and Venue allegations are reiterated and realleged as though set forth verbatim and re-alleges every allegation set forth in paragraphs 1-61.

63. Defendants represented to Plaintiffs that the assets that were being sold pursuant to the Agreements were worth significantly more than the $10 million purchase amount.

64. Defendants new that its representation of the value of the assets being purchased was false.

65. Defendants' representation asset value was material to the decision to enter into the Agreements. Had Plaintiffs known it would not make as much money from the purchase of the assets as Defendants represented it would not have entered into the Agreements nor executed the Promissory Notes.

66. Defendants had knowledge that its material representation was false or had a reckless disregard for its truth or falsity.

67. Defendant intended that Plaintiffs act upon its representations that the value of the assets far exceeded the purchase price.

68. Plaintiffs were ignorant of the fact that the asset value did not far exceed the aggregate purchase price of $10 million.

69. Plaintiffs relied on the truth in Defendants representation of the value of the assets being purchased.

70. Plaintiffs had a right to rely on Defendants representations that the value of the assets.

71. As a result of Defendants valuation of assets to be purchased, Plaintiffs were directly and proximately injured. Plaintiffs are entitled to actual, consequential, compensatory, special damages and punitive damages in an amount to be proven at trial.

**FOR A THIRN CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION AS TO DEFENDANTS GARY THORNHILL, THORNHILL ASSURANCE SERVICES, INC., MEDALIST ASSURANCE SERVICES, INC.**

72. The foregoing factual, jurisdictional and Venue allegations are reiterated and realleged as though set forth verbatim and realleged as though set forth verbatim and re-alleges every allegation set forth in paragraphs 1-71.

73. Defendants misrepresented to Plaintiffs that the value of the assets Plaintiffs were purchasing were worth much more than they truthfully were, and that Defendants would transfer the assets to Plaintiffs.

74. Defendants had a pecuniary interest in making these statements because Plaintiffs would be obligated to pay $10 million dollars over the next 60 months and had no reasonable grounds to believe that the misrepresentations were true.

75. Defendants owed Plaintiffs a duty of truthfulness, good faith and fair dealings in its communications to Plaintiffs and the Defendants breached that duty by misrepresenting the truthful value of the assets Plaintiffs were purchasing from Defendants and that the assets would be transferred.

76. Plaintiffs justifiably relied on Defendants misrepresentations and entered into the Agreements and Promissory Notes. Had Plaintiffs known the truth and not justifiably relied on Defendants misrepresentations as to the value and transfer of assets, Plaintiffs would not have agreed to the purchase.

77. As a result of Defendants misrepresentations, Plaintiffs have suffered a pecuniary loss as a direct and proximate result of reliance on the representations. Plaintiffs are entitled to actual, consequential, compensatory, and special damages in an amount to be proven at trial.

## FOR A FOURTH CAUSE OF ACTION
## INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP AS TO GARY THORNHILL, JOHN MCSWANEY, COBALT LT HOLDINGS, LLC, KEVEN JAY LAINGM ADVISORY 4 LIFE, LLC,

78. The foregoing factual, jurisdictional and Venue allegations are reiterated and realleged as though set forth verbatim and re-alleges every allegation set forth in paragraphs 1-77.

79. Contracts and relationships exist between Plaintiffs, its customers, and providers.

80. Defendants are aware of the relationships and agreements between Plaintiffs, its customers, and providers.

81. Defendants have intentionally contacted some, if not all, of Plaintiffs customers and providers by using property that belongs to Plaintiffs including but not limited to, book of business, contact and medical information, trade secrets, computers etc.

82. No justification existed or exists for Defendants to interfere with Plaintiff's customers and carriers and providers.

83. Plaintiffs have suffered damages because of Defendant's actions. It has suffered actual damages in lost customers and revenue.

84. Plaintiffs are informed and believe that they are entitled to actual damages, compensatory damages, and punitive damages.

## FOR A FIFTH CAUSE OF ACTION

## INTERFERENCE WITH A POTENTIAL CONTRACTUAL RELATIONSHIP AS TO GARY THORNHILL, JOHN MCSWANEY, COBALT HOLDINGS LT, LLC KEVEN JAY LAINGM ADVISORY 4 LIFE

85. The foregoing factual, jurisdictional and Venue allegations are reiterated and realleged as though set forth verbatim and re-alleges every allegation set forth in paragraphs 1-84.

86. Defendants intentionally interfered with Plaintiffs potential contractual relations, including but not limited to the BAPS contract.

87. Defendants interfered with the BAPS contract, and perhaps others, for an improper purpose or by improper methods. Defendants, despite owing a duty to Plaintiffs, have cutoff communications with Plaintiffs, refused to provide information to and for Plaintiffs and sought to write a new contract with BAPS which would cause significant damage to Plaintiffs.

88. Plaintiffs are informed and believe that they are entitled to actual damages, compensatory damages, and punitive damages.

## FOR A SIXTH CAUSE OF ACTION

## CIVIL CONSPIRACY AS TO DEFENDANTS GARY THORNHILL, MARY THORNHILL, JOHN MCSWANEY, COBALT LT HOLDINGS, LLC, KEVIN JAY LAING, ADVISORY 4 LIFE, LLC

89. The foregoing factual, jurisdictional and Venue allegations are reiterated and realleged as though set forth verbatim and re-alleges every allegation set forth in paragraphs 1-88.

90. Defendants conspired together to injure Plaintiff by taking existing and potential clients from Plaintiffs and keeping them for their own financial gain.

91. Defendant's purpose in obtaining the clients and potential clients was to cause injury to Plaintiffs and to cause its dissolution so that they could reap the financial benefits for themselves.

92. As a direct cause of Defendant's conspiracy, Plaintiffs have suffered special damages not already plead by way of damage to replace lost business, business goodwill, reputation by the false information Defendants spread to existing and potential customers regarding Plaintiffs' financial condition.

93. Plaintiffs are informed and believe that they are entitled to damages incurred because of Defendant's actions.

## FOR A SEVENTH CAUSE OF ACTION

## UNJUST ENRICHMENT/QUANTUM MERIUT AS TO DEFENDANTS GARY THORNHILL, MARY THORNHILL, MARY THORNHILL LIVING TRUST, JOHN MCSWANEY, COBALT LT HOLDINGS, LLC, THORNHILL FINANCIAL CORPORATION, MLT ENTERPRISES, INC.

94. The foregoing factual, jurisdictional and Venue allegations are reiterated and realleged as though set forth verbatim and re-alleges every allegation set forth in paragraphs 1-93.

95. As a result of the conduct described above, defendants have been unjustly enriched at the expense of the Plaintiffs by obtaining funds from Plaintiffs as follows:

   A. Mary Thornhill and/or Mary Thornhill Living Trust $9,300.

   B. John McSwaney           $2,119,435.13.

   C. MLT Enterprises, Inc.   $2,668,795.99.

   D. Thornhill Financial Corp.   $4,663,035.01.

   E. Cobalt LT Holding, LLC   $1,902,415.12.

96. In addition to Defendants named above A-E, Kevin Laing, and Advisory 4 Life, LLC, should be disgorged of any monies, profits, and gains which they have obtained or will unjustly obtain in the future at the expense of Plaintiffs.

## PUNITIVE DAMAGES

97. As a result of the conduct of the Defendants being willful, wanton, malicious and/or with a reckless disregard for Plaintiffs, Plaintiffs are informed and believe that they are entitled to punitive damages in an amount to be determined by a jury and as allowed by law.

## TRIAL BY JURY

55. Plaintiffs demand a jury trial on all claims and issues so triable.

## PRAYER FOR RELIEF

57. **WHEREFORE,** Plaintiffs pray for a judgment against Defendants, jointly and severally, for all actual, consequential, special, statutory, incidental, and punitive damages along with prejudgment interest, legal fees and costs where applicable, all in an amount to be more specifically proven at trial, and for the disgorgement and reimbursement of all monies paid by Plaintiffs to Defendants along with any unjust and ill-gotten funds received by Defendants and further relief as this Court may deem just and proper.

        Respectfully Submitted

        /s/Michael G. Matthews
        Michael Matthews
        Attorney for Plaintiffs
        District Court ID# 10012
        2015 Boundary Street
        Suite 319
        Beaufort, SC 29902
        (843) 379-0702
        (843)379-0703 fax
        Matthews.michaelg@gmail.com

Date: April 16, 2024